**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

**EMIKE J. NEWSOME,**

Plaintiff,

v. CASE NO: ______________

**TRANS UNION LLC,**

Defendant.

**PLAINTIFF'S COMPLAINT**

COMES NOW the Plaintiff, Emike J. Newsome ("Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, Trans Union, LLC ("Trans Union"), and states as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for damages, exclusive of attorney's fees and costs, brought by Plaintiff against Defendant Trans Union for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

## II. JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Trans Union is subject to the provisions of the FCRA and to the personal jurisdiction of this Court because it maintains its principal place of business within this District and transacts business here continuously and systematically.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Trans Union resides in Cook County, Illinois, and because the acts and omissions complained of were committed and caused by Trans Union within this District.

## III. PARTIES

5. Plaintiff is a natural person residing in Huntsville, Alabama.

6. Plaintiff is a *Consumer* within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Trans Union, LLC is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

8. Trans Union is a nationwide "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). In exchange for monetary fees, dues, or through cooperative arrangements, Trans Union regularly engages in the practice of assembling and evaluating consumer credit information and other information concerning consumers for the purpose of furnishing consumer reports to third parties. Trans Union relies upon the mail, the internet, and other instrumentalities of interstate commerce to prepare and distribute those reports. As such, Trans Union is fully subject to, and aware of, its obligations under the FCRA.

## IV. FACTUAL ALLEGATIONS

### *Plaintiff's January 2026 Consumer Disclosure*

9. On or about January 8, 2026, Plaintiff requested a copy of his consumer file disclosure from Trans Union.

10. Trans Union responded by producing a document titled "Personal Credit Report," dated January 8, 2026 and bearing File Number 456808500. **SEE PLAINTIFF'S EXHIBIT A.**

11. Pursuant to 15 U.S.C. § 1681g(a)(1), upon receipt of Plaintiff's request Trans Union was required to clearly and accurately disclose all information in Plaintiff's file at the time of the request, subject only to the limited exception permitting truncation of Plaintiff's Social Security number.

12. A primary purpose of the disclosure required by 15 U.S.C. § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and to correct that information through the procedure established by 15 U.S.C. § 1681i. *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). A consumer reporting agency must therefore do more than merely make an accurate disclosure of the information in a consumer's credit file. *Id.*

13. The purpose of Section 1681g is to enable consumers to obtain the information in their files in order to dispute potential inaccuracies, so that inaccurate information is not sent to third parties. *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016).

14. Trans Union's Disclosure reported sixteen tradelines and one public record, together with sections identifying the third parties to whom Trans Union had furnished consumer reports concerning Plaintiff.

***Trans Union's Disclosure Was Not Complete, Clear, or Accurate***

15. Trans Union's Disclosure printed a uniform set of labeled data fields on each tradeline, including fields labeled "Balance," "Credit Limit," "Payment Received," "Pay Status," and "Date Closed," together with a month-by-month payment history displaying rows labeled "Balance," "Past Due," "Amount Paid," "Scheduled Payment," and "Rating."

16. Trans Union populated those fields on certain tradelines and omitted them entirely from other tradelines within the same document, produced on the same day from the same file. The omissions are therefore not a limitation of Trans Union's disclosure format.

***Omitted Current Balance***

17. Five tradelines in Trans Union's Disclosure are reported with a Pay Status of "Account Included in Bankruptcy": Capital One account ending 6828, Capital One account ending 2714, First Premier Bank account ending 3696, First Premier Bank account ending 3103, and Redstone FCU account ending 1515.

18. On each of those five tradelines Trans Union omitted the Balance field in its entirety. No Balance line appears. The field is not reported as zero, as unavailable, or as not reported. It is simply absent.

19. Trans Union nevertheless disclosed a High Balance for each of those five tradelines, in the amounts of $312, $492, $575, $764, and $12,750 respectively, and disclosed a Date Updated for each of them, establishing that Trans Union maintains and updates balance data for these accounts.

20. In the same document, Trans Union disclosed an express Balance of $0 for every closed non-bankruptcy tradeline in Plaintiff's file, including AcceptanceNow, Comenity

Bank/Peebles, and GM Financial, each of which is reported with a Pay Status of "Paid, Closed; was Paid as agreed."

21. Trans Union thus demonstrated within a single disclosure that it is fully capable of printing an explicit zero balance on a closed account. It printed that zero for accounts closed outside bankruptcy and withheld the field altogether for accounts closed in bankruptcy.

22. The omission is selective, not formatting. The current balance of an account is core information contained in a consumer's file, identified in the *Credit Reporting Resource Guide* published by the Consumer Data Industry Association as Field 21, Current Balance. **SEE PLAINTIFF'S EXHIBIT B.**

23. Upon information and belief, each furnisher reported a current balance for each of the five bankruptcy tradelines to Trans Union, that value was contained within Trans Union's file concerning Plaintiff at the time of his request, and Trans Union discloses that value to the third parties who purchase consumer reports concerning Plaintiff.

24. A consumer who cannot see whether a bankruptcy tradeline reports a balance of zero or a balance of thousands of dollars cannot determine whether the account is being reported consistently with his discharge, and cannot identify the inaccuracy in order to dispute it.

25. Plaintiff's Chapter 7 bankruptcy was discharged. Trans Union's Disclosure reports the underlying public record from the United States Bankruptcy Court for the Northern District of Alabama under the express type "CHAPTER 7 BANKRUPTCY DISCHARGED," with a Date Filed of October 15, 2020, a Date Paid of March 18, 2021, and a Date Updated of March 19, 2021.

26. Trans Union therefore possessed, and disclosed within the four corners of the same document, the fact that Plaintiff's Chapter 7 proceeding resulted in a discharge.

27. Trans Union nevertheless reported each of the five tradelines identified above with a Pay Status of "Account Included in Bankruptcy." Not one of the five is reported as discharged. The Remarks field on those tradelines states "CHAPTER 7 BANKRUPTCY," and adds on two of them only that the account was closed by the credit grantor and on two others only that the account information was disputed by the consumer. The word discharged appears nowhere on any of the five tradelines.

28. Inclusion in a bankruptcy petition and discharge in bankruptcy are materially different states. An account reported as included in a bankruptcy conveys only that the debt was scheduled in a proceeding that may or may not have concluded. It does not convey that the obligation has been extinguished by order of the bankruptcy court and that no amount remains legally collectible from Plaintiff.

29. The two omissions compound one another. Trans Union withheld the balance on each of the five tradelines and simultaneously withheld the fact that the underlying debts had been discharged. A person reading Plaintiff's file is left unable to determine either how much these accounts report as owing or whether anything is owed on them at all.

30. Reporting a discharged debt as merely included in a bankruptcy, without the discharge and without a balance, is inaccurate and materially misleading to any person reviewing Plaintiff's file, and it overstates Plaintiff's outstanding obligations to every third party to whom Trans Union furnishes that file.

31. Trans Union's disclosure of the discharge on the public record in the same document establishes that the discharge status was contained within its file concerning Plaintiff and was available to be reported on the tradelines themselves. Trans Union did not report it.

***Omitted Current Credit Limit***

32. Trans Union's Disclosure reported an express, current Credit Limit for five tradelines: Capital One account ending 6828 at $200, Capital One account ending 2714 at $300, First Premier Bank account ending 3696 at $400, First Premier Bank account ending 3103 at $700, and Comenity Bank/Peebles at $200.

33. For five other revolving tradelines, Trans Union omitted the current Credit Limit field entirely and substituted a historical statement of a credit limit that expired before the date of the Disclosure. Those tradelines are Capital One account ending 3764, reported as "Credit limit of $1,000 from 09/2025 to 12/2025"; Mission Lane Tab Bank, reported as "Credit limit of $750 from 08/2025 to 12/2025"; Kikoff Inc, reported as "Credit limit of $3,500 from 11/2024 to 12/2025"; MRV/Revvi/VT, reported as "Credit limit of $300 from 03/2025 to 12/2025"; and The Bank of Missouri/Milestone, reported as "Credit limit of $700 from 06/2025 to 12/2025".

34. Trans Union produced the Disclosure on January 8, 2026. Every one of those historical credit limit statements terminates in December 2025. Trans Union therefore disclosed no credit limit at all for any of those five accounts as of the date of Plaintiff's request.

35. Three of those five accounts are open and active. The Bank of Missouri/Milestone is reported with a Pay Status of "Current Account," a Balance of $324, and a Date Updated of December 21, 2025. Kikoff Inc is reported with a Pay Status of "Current Account," a

Balance of $350, and a Date Updated of December 31, 2025. MRV/Revvi/VT is reported with a Pay Status of "Current Account" and a Date Updated of December 22, 2025.

36. A current credit limit is the denominator of the credit utilization ratio, which is among the most heavily weighted inputs in the credit scoring models that consume Trans Union's data. A consumer who is shown a balance without a current credit limit cannot evaluate how his own file is being read by the lenders to whom Trans Union sells it.

37. The credit limit of an account is core information contained in a consumer's file, identified in the *Credit Reporting Resource Guide* as Field 11, Credit Limit. **SEE PLAINTIFF'S EXHIBIT B.**

38. Upon information and belief, each of those five furnishers reported a current credit limit to Trans Union for the reporting period ending on the date of Plaintiff's request, that value was contained within Trans Union's file concerning Plaintiff, and Trans Union discloses that value to the third parties who purchase consumer reports concerning Plaintiff.

***Omitted Amount Paid***

39. Trans Union's Disclosure reported a "Payment Received" field for ten tradelines, including Mission Lane Tab Bank at $0, AcceptanceNow at $613, Comenity Bank/Peebles at $0, GM Financial at $12,111, Kikoff Inc at $35, Kikoff Lending LLC at $10, MRV/Revvi/VT at $279, and The Bank of Missouri/Milestone at $230.

40. Trans Union omitted the Payment Received field entirely from eight tradelines: Capital One account ending 3764, the five bankruptcy tradelines identified above, Jefferson Capital System, and LVNV Funding LLC.

41. The contrast between the two Capital One and Mission Lane charge-off accounts is dispositive. Capital One account ending 3764 and Mission Lane Tab Bank are both revolving credit card accounts, both reported with a Pay Status of "Charge-off," both reported with a Last Payment Made date of December 8, 2023, both closed in July 2024, and both updated in December 2025. Mission Lane Tab Bank is reported with a Payment Received field and with an "Amount Paid" row in every month of its payment history. Capital One account ending 3764 is reported with neither.

42. Trans Union thus printed the amount paid for one charged-off credit card and withheld it for another charged-off credit card of identical posture in the same document.

43. The omission extends into the payment history. On the five bankruptcy tradelines, Trans Union's month-by-month payment history displays only a "Rating" row. The Balance, Past Due, Amount Paid, and Scheduled Payment rows that Trans Union prints on other tradelines are absent for every month reported, across a combined 191 months of payment history.

44. Trans Union nevertheless disclosed a Last Payment Made date for each of the five bankruptcy tradelines, of May 14, 2019 for four of them and December 23, 2020 for the fifth, establishing that Trans Union possesses payment data for those accounts and withheld it.

45. On the Jefferson Capital System and LVNV Funding LLC tradelines, Trans Union disclosed no payment history whatsoever, no amount paid, no date closed, and no last payment date, while reporting each account as a collection with a past due balance of $1,104 and $591 respectively.

46. Upon information and belief, the amounts paid on each of these accounts were reported to Trans Union by the furnishers, were contained within Trans Union's file concerning Plaintiff at the time of his request, and are disclosed by Trans Union to the third parties who purchase consumer reports concerning Plaintiff.

***Omitted Date of First Delinquency***

47. Trans Union's Disclosure reported an "Estimated month and year this item will be removed" for every adverse tradeline in Plaintiff's file and for the public record.

48. Those estimated removal dates are: January 2031 for Capital One account ending 3764; January 2031 for Mission Lane Tab Bank; June 2026 for Capital One account ending 6828; June 2026 for Capital One account ending 2714; May 2026 for First Premier Bank account ending 3696; May 2026 for First Premier Bank account ending 3103; June 2027 for Redstone FCU; December 2030 for Jefferson Capital System; August 2030 for LVNV Funding LLC; and September 2030 for the Chapter 7 bankruptcy public record.

49. Under 15 U.S.C. § 1681c(a)(4) and (c)(1), the date on which an adverse item must be removed from a consumer's file is a fixed arithmetic function of the date of first delinquency. The removal date is the date of first delinquency plus seven years, running from a point no later than 180 days after the account was placed for collection or charged to profit and loss.

50. Trans Union cannot calculate and publish a removal date without possessing the date of first delinquency from which that date is derived. Having disclosed the output of the calculation, Trans Union necessarily possessed the input.

51. Trans Union nevertheless omitted the date of first delinquency from every tradeline in the Disclosure. The Disclosure contains no field labeled date of first delinquency, no field labeled date of major delinquency, and no equivalent field, on any account.

52. The result is that Plaintiff was given a date on which each adverse item will disappear from his file and was denied the single piece of information required to determine whether that date is correct. Plaintiff cannot verify Trans Union's arithmetic without the number Trans Union used.

53. This omission is precisely the harm the disclosure requirement exists to prevent. A consumer who cannot see the date of first delinquency cannot identify an account that is being re-aged, cannot determine whether an adverse item has outlived its permissible reporting period, and cannot dispute either defect.

54. Upon information and belief, the date of first delinquency for each adverse tradeline was reported to Trans Union by the furnisher, was contained within Trans Union's file concerning Plaintiff at the time of his request, and is disclosed by Trans Union to the third parties who purchase consumer reports concerning Plaintiff.

***Incomplete and Scrambled Account Numbers***

55. Trans Union disclosed no complete account number for any tradeline in Plaintiff's file. Every account number in the Disclosure is truncated, and several are reduced to a handful of characters, including Redstone FCU as "5101515", Kikoff Inc as "CLE254", Kikoff Lending LLC as "SVD4", Self Ren Levelcredit as "L106", and Jefferson Capital System as "396052822".

56. Trans Union further advised Plaintiff within the Disclosure itself that his account numbers have been partially masked and, in some cases, scrambled.

57. A scrambled account number is not a truncated account number. It is a fabricated string that does not correspond to any digit sequence in Plaintiff's file, and it affirmatively defeats the consumer's ability to match a tradeline against his own records.

58. Upon information and belief, each furnisher reported the complete account number for its respective account to Trans Union, each complete account number was contained within Trans Union's file concerning Plaintiff at the time of his request, and Trans Union includes those account numbers in the consumer reports it sells to third parties.

59. The failure to disclose full account numbers violates the FCRA's requirement that a consumer reporting agency clearly and accurately disclose all information contained in a consumer's file. *See Washington v. Equifax Info. Servs., LLC*, No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019).

60. In a 2000 opinion letter, the Federal Trade Commission stated its view that a consumer reporting agency which always scrambles or truncates account numbers does not technically comply with Section 609, because it does not provide an accurate, and perhaps not a clear, disclosure of all information in the file. Advisory Opinion to Darcy, June 30, 2000. **SEE PLAINTIFF'S EXHIBIT C.**

## V. TRANS UNION REPORTED INFORMATION THAT IS FACIALLY INACCURATE

61. Trans Union reported the GM Financial automobile loan with a Monthly Payment of $0 and with Terms stating "$0 per month, paid Monthly for 74 months." Trans Union reported

the same account with a High Balance of $12,460 and a Payment Received of $12,111. A seventy-four month automobile loan of $12,460 does not carry a monthly payment of zero dollars, and Trans Union's own figures on the same tradeline establish that it did not.

62. Trans Union reported the AcceptanceNow rental agreement with a Monthly Payment of $0 and with Terms stating "$0 per month, paid Monthly for 12 months," while reporting a High Balance of $1,211 and a Payment Received of $613 on the same tradeline. A twelve-month rental agreement does not carry a monthly obligation of zero dollars.

63. Trans Union reported the Comenity Bank/Peebles account with a Payment Received of $0 while simultaneously reporting a Pay Status of "Paid, Closed; was Paid as agreed," a Date Paid of January 4, 2019, and a Last Payment Made date of January 4, 2019. An account cannot be paid in full and paid as agreed while the amount received on it is zero.

64. Trans Union reported the Comenity Bank/Peebles account with a payment history in which every one of the fifteen months reported carries a rating of "X," which Trans Union's own Payment/Remarks Key defines as "Unknown." Trans Union thus reported that it does not know how Plaintiff paid the account in any month of its existence while simultaneously reporting that he paid it as agreed.

65. Trans Union reported the Redstone FCU automobile account with sixty-two consecutive months rated "X," or Unknown, running from July 2020 through August 2025, while reporting a Pay Status of "Account Included in Bankruptcy" and an estimated removal date of June 2027.

66. Trans Union reported the Redstone FCU account with an isolated rating of "X" in April 2019 and again in December 2019, in each case surrounded on both sides by months rated

"OK." Trans Union likewise reported First Premier Bank account ending 3696 with an isolated rating of "X" in April 2019, followed by ratings of "OK" in May and June 2019. A furnisher that reported the months before and after does not omit the month between, and Trans Union possessed the data it declined to report.

67. Trans Union reported Capital One account ending 3764 with derogatory ratings for twenty-nine consecutive months, from February 2024 through August 2025, in every one of which the Balance, Past Due, and Remarks rows are reported as blank. Trans Union reported ratings of thirty days late, sixty days late, ninety days late, one hundred twenty days late, and charge-off for months in which it reported no balance owed, no amount past due, and no supporting data of any kind.

68. Trans Union reported Mission Lane Tab Bank with derogatory ratings for eighteen consecutive months, from February 2024 through July 2025, in every one of which the Balance, Past Due, and Amount Paid rows are reported as blank.

69. A derogatory rating assigned to a month for which the consumer reporting agency reports no balance, no amount past due, and no amount paid is unverifiable on its face. Trans Union published those ratings without any underlying data capable of supporting them.

70. Each of these defects is apparent from the face of Trans Union's own disclosure. None of them required any communication with a furnisher to detect. Trans Union published them anyway.

71. Reasonable procedures to assure maximum possible accuracy would have caught a seventy-four month automobile loan reported at zero dollars per month, an account reported as paid as agreed with no payment ever received, and twenty-nine months of

delinquency ratings unsupported by any reported balance. Trans Union employed no such procedures.

## VI. TRANS UNION FURNISHED THE SAME FILE TO NAMED THIRD PARTIES

72. Trans Union's Disclosure contains sections titled "Regular Inquiries" and "Account Review Inquiries," which identify third parties to whom Trans Union furnished a consumer report concerning Plaintiff and the dates on which it did so.

73. Trans Union reported that it furnished a consumer report concerning Plaintiff to TBOM/Vervent Total Visa on December 8, 2024, and to TBOM/Milestone on June 4, 2025, in each case in connection with an application for credit initiated by Plaintiff.

74. Trans Union further reported that it furnished consumer reports concerning Plaintiff to Canopy Mortgage LLC on August 18, 2025; to Allstate Insurance on October 7, 2024, December 4, 2024, and twice on October 27, 2025; to Brookdale Living Communities through BigTrue Screening on September 30, 2024; to OneMain Financial on January 22, 2025 and March 20, 2025; to WebBank/Avant LLC on February 5, 2025; to Upgrade on October 29, 2024; to Affirm Inc on September 5, 2024; to Personify on March 30, 2025; and to Capital One on December 23, 2025.

75. The consumer reports Trans Union furnished to those third parties were generated from the same file, and drawn from the same account records, as the Disclosure Trans Union produced to Plaintiff.

76. Trans Union does not maintain a separate or corrected set of records concerning Plaintiff. The tradelines Trans Union furnished to Canopy Mortgage LLC, Allstate Insurance,

Brookdale Living Communities, OneMain Financial, WebBank/Avant LLC, Upgrade, Affirm Inc, Personify, Capital One, and the two Bank of Missouri entities carried the same defects identified above, including an automobile loan reported at zero dollars per month, an account reported as paid as agreed with no payment ever received, twenty-nine months of delinquency ratings unsupported by any reported balance, and sixty-two consecutive months of payment ratings reported as Unknown.

77. As a direct and proximate result of Trans Union assembling and furnishing Plaintiff's file in the condition described above to the third parties named herein, Plaintiff suffered loss of credit, denial of credit, loss of the ability to purchase and benefit from credit, the extension of credit on less favorable terms and at higher interest rates, and damage to his reputation and character arising from Trans Union's brandishing of an incomplete and inaccurate consumer report to those third parties, which in turn caused Plaintiff humiliation and embarrassment.

78. Plaintiff was unable to identify, evaluate, or address the defects in the file Trans Union was furnishing to those third parties, because Trans Union withheld from Plaintiff the very information that would have permitted him to do so: the current balances on his bankruptcy tradelines, the current credit limits on his open revolving accounts, the amounts paid on eight of his accounts, the date of first delinquency on every adverse item, and the complete account numbers of every account in his file.

79. The failure of an entity to provide accurate and truthful information as required by law creates an injury in fact and thus standing pursuant to Article III. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that injury to a plaintiff's

statutorily created right to truthful information is itself a cognizable injury sufficient to satisfy the Article III requirement of injury in fact.

## VII. PREVALENCE OF TRANS UNION'S ERRORS

80. Upon information and belief, Trans Union produced Plaintiff's Disclosure using an automated template that draws data from its database and inserts it into preset fields within a fixed consumer disclosure format.

81. Upon information and belief, this same template is used each time a consumer requests a file disclosure from Trans Union, including through www.annualcreditreport.com, which is where the majority of consumers obtain their Trans Union disclosure.

82. Consumer disclosures produced through that template exhibit the same omission of the current balance on bankruptcy tradelines, the same substitution of an expired historical credit limit for a current credit limit, the same omission of the amount paid, and the same omission of the date of first delinquency that appear in Plaintiff's Disclosure.

83. As a result, every consumer whose file contained a bankruptcy tradeline, an open revolving account, or an adverse item bearing an estimated removal date, and who obtained a Trans Union file disclosure during the period this template has been in use, likely received an incomplete disclosure of the same character Plaintiff received.

84. Trans Union's error has therefore likely affected thousands of consumers.

85. Despite being aware of these defects for years, Trans Union has taken no corrective action. *See Purdy v. Equifax Info. Servs. LLC*, No. 8:19-cv-00217 (M.D. Fla. Jan. 28, 2019); *Washington v. Equifax Info. Servs., LLC*, No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019).

86. Trans Union participates in the Consumer Data Industry Association and in the development of the *Credit Reporting Resource Guide*, and is therefore aware of the field definitions it disregarded in producing Plaintiff's Disclosure.

87. Trans Union's failure to disclose all of the information in a consumer's file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Trans Union's desire to avoid costs and increase profits.

88. Trans Union's reading of its obligations under 15 U.S.C. §§ 1681g and 1681e(b) was, at a minimum, objectively unreasonable, and its conduct therefore constituted a reckless disregard of those obligations. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

89. Trans Union's knowing and repeated conduct warrants an award of ***punitive damages***.

## VIII. PLAINTIFF'S DAMAGES

90. Plaintiff has a right to a full and complete disclosure of the contents of his file upon demand, at least once every twelve months and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. §§ 1681g, 1681j.

91. Trans Union's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived him of that right.

92. As a direct and proximate result of Trans Union's conduct, Plaintiff has suffered damages including but not limited to statutory damages and actual damages, including loss of credit, denial of credit, loss of the ability to purchase and benefit from credit, the extension of credit on less favorable terms and at higher interest rates, lower credit scores, damage to

character and reputation, humiliation, embarrassment, anxiety, mental distress, and emotional distress.

93. Trans Union's incomplete, unclear, and inaccurate disclosure and reporting has caused Plaintiff substantial emotional distress, and the harm is ongoing so long as Trans Union continues to withhold from Plaintiff information contained in his own file while furnishing that file to third parties.

94. Plaintiff has retained the undersigned counsel to represent him in this matter and has assigned to counsel his right to obtain reimbursement of his reasonable fees and costs.

**COUNT ONE**

**TRANS UNION WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g**

95. Plaintiff adopts and incorporates paragraphs 1 through 94 as if fully stated herein.

96. Trans Union violated **15 U.S.C. § 1681g(a)(1)** when responding to Plaintiff's request for his consumer file disclosure by failing to clearly and accurately disclose to Plaintiff, a *Consumer*, all of the information in his file at the time of the request.

97. Trans Union omitted the current balance from five bankruptcy tradelines while printing an explicit zero balance on closed non-bankruptcy tradelines in the same document; omitted the current credit limit from five revolving tradelines, three of which are open and active, while printing an express credit limit on five others; omitted the amount paid from eight tradelines, including one charged-off credit card while printing it for a second charged-off credit card of identical posture; omitted the date of first delinquency from every adverse tradeline while publishing the estimated removal date calculated from it; and disclosed no

complete account number for any account while advising Plaintiff that some of the numbers shown to him had been scrambled.

98. Each of the omitted items was reported to Trans Union by the data furnishers, was contained within Trans Union's file concerning Plaintiff at the time of his request, and is disclosed by Trans Union to the third parties who purchase consumer reports concerning Plaintiff.

99. Trans Union knowingly provided an incomplete and inaccurate disclosure to Plaintiff, as it has known of these defects, which have been identified and disputed by other consumers and litigated against the nationwide consumer reporting agencies for years.

100. Trans Union's conduct was willful within the meaning of 15 U.S.C. § 1681n in that it acted knowingly or in reckless disregard of an objectively unreasonable reading of its statutory obligations.

101. Trans Union is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of his actual damages and statutory damages of not less than $100 and not more than $1,000 per violation, together with punitive damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Trans Union, LLC, awarding Plaintiff the following relief:

a. The greater of Plaintiff's actual damages and statutory damages of up to $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other and further relief as this Court deems just and proper.

**COUNT TWO**

**TRANS UNION NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g**

102. Plaintiff adopts and incorporates paragraphs 1 through 94 as if fully stated herein.

103. Trans Union has a legal duty under 15 U.S.C. § 1681g(a)(1) to provide a consumer with a clear and accurate disclosure of all information contained in its file concerning that consumer at the time of the consumer's request.

104. Trans Union breached that duty when it omitted the current balance, the current credit limit, the amount paid, the date of first delinquency, and the complete account numbers from the Disclosure it produced to Plaintiff, each of which was contained within its file at the time of the request.

105. Trans Union's breach was the direct and proximate cause of Plaintiff's damages.

106. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Trans Union, LLC, awarding Plaintiff the following relief:

a. Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other and further relief as this Court deems just and proper.

**COUNT THREE**

## TRANS UNION WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

107. Plaintiff adopts and incorporates paragraphs 1 through 94 as if fully stated herein.

108. Trans Union violated **15 U.S.C. § 1681e(b)** by preparing and furnishing consumer reports concerning Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning him.

109. Trans Union reported a seventy-four month automobile loan with a monthly payment of zero dollars, a twelve-month rental agreement with a monthly payment of zero dollars, an account paid in full and paid as agreed on which no payment was ever received, fifteen months of Unknown ratings on an account simultaneously reported as paid as agreed, sixty-two consecutive months of Unknown ratings on a second account, and forty-seven months of delinquency and charge-off ratings across two accounts for which it reported no balance, no amount past due, and no amount paid.

110. Each of those defects is apparent on the face of Trans Union's own disclosure and required no communication with any furnisher to detect. Trans Union published them without correction.

111. Trans Union has been repeatedly notified, through litigation and through consumer disputes, that internally contradictory tradelines of this character appear in the reports it sells. Its continued publication of them reflects a reckless disregard of the risk that it was violating 15 U.S.C. § 1681e(b).

112. Trans Union is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of his actual damages and statutory damages, together with punitive damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Trans Union, LLC, awarding Plaintiff the following relief:

a. The greater of Plaintiff's actual damages and statutory damages of up to $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other and further relief as this Court deems just and proper.

**COUNT FOUR**

**TRANS UNION NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)**

113. Plaintiff adopts and incorporates paragraphs 1 through 94 as if fully stated herein.

114. Trans Union has a legal duty under 15 U.S.C. § 1681e(b) to follow reasonable procedures to assure maximum possible accuracy of the information it reports concerning a consumer whenever it prepares a consumer report.

115. Trans Union breached that duty by preparing and furnishing consumer reports concerning Plaintiff that contained the facially contradictory and unsupported information described above.

116. Trans Union's breach was the direct and proximate cause of Plaintiff's damages.

117. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Trans Union, LLC, awarding Plaintiff the following relief:

a. Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other and further relief as this Court deems just and proper.

**IX. DEMAND FOR JURY TRIAL**

118. Plaintiff hereby demands a trial by jury on all issues so triable.

This 2nd day of September 2026.

Respectfully submitted,

*/s/ Esther Oise*
Esther Oise, Esq.
Georgia Bar No. 686342
Oise Law Group, P.C.
2635 Governors Walk Blvd
Snellville, GA 30039
770-895-3736 | oiselaw@gmail.com
Attorney for Plaintiff

**ATTACHED EXHIBIT LIST**

Exhibit A — Plaintiff's Trans Union Personal Credit Report dated January 8, 2026, File Number 456808500.

Exhibit B — Excerpts from the CDIA *Credit Reporting Resource Guide*, Field 11 and Field 21.

Exhibit C — Federal Trade Commission Advisory Opinion to Darcy, June 30, 2000.